IRA DOLLAR v. THE STATE.

No. 6888.    Decided April 12, 1922.

Rehearing Denied June 21, 1922.

Robbery—Severance—Co-defendant—Practice in Trial Court.

The right to have the testimony of a co-defendant did not depend upon the fact whether defendant had filed a motion for severance, but he was

entitled thereto if co-defendant was tried and acquitted, or the prosecution against him dismissed. However, in the *instant case, it was not shown that* the dismissal was purposely delayed to prevent appellant from securing a new trial, and it was therefore no reversible error in the trial court's holding that the State could not be compelled to dismiss before the motion for new trial in the instant case was acted upon.

Appeal from the District Court of Hunt. Tried below before the Honorable George B. Hall.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dial, Melson, Davidson & Brim,* for appellant.—On question of testimony of codefendant: Cameron v. State, 22 S. W. Rep., 1024, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, of the State.

MORROW, PRESIDING JUDGE.—Conviction is for robbery; punishment fixed at confinement in the penitentiary for a period of five years.

The subjects of the robbery were Frank Cozine and Raymond Hampton. The theory of the State was that the appellant and two other persons committed the robbery, one of them threatening the injured parties with a pistol while the others relieved them of their property.

Appellant's theory, as developed from his testimony, was that he fell in with Pate and Rogers; his previous acquaintance with Pate was slight; while they were together in the night-time, the two negroes named in the indictment were robbed, Pate, holding a gun in his hand, commanded them to stop and also ordered the appellant, pointing a gun at him at the time, to take their property from them. His part in the transaction was under duress occasioned by the conduct of Pate. He got from one of the negroes a knife which he delivered to Pate and which Pate afterwards put into the pocket of appellant. The injured parties were not acquainted with the appellant or his companions, and said that one of the assailants drew a pistol and ordered them to throw up their hands, and appellant and another searched them and got from one of them fifteen dollars and a pocket-knife. They observed no coercion by the one who pointed the pistol upon the other two during the transaction. From the other boy they got twenty-five dollars and a hat.

There was testimony identifying the appellant and Rogers as two of the assailants. Rogers, appellant, and Pate were all indicted.

Appellant was tried first. On Pate's trial, Rogers was used as a witness for the State. His testimony given in the trial of Pate

coincides with that of the appellant upon his own trial. That is to say, he confirmed appellant's statement that they, Dollar and Rogers, participated in the robbery under coercion by Pate.

It is urged that Rogers' testimony should now be available to the appellant. In the motion for new trial, it was set up that Rogers gave his testimony under a full promise of immunity and that the State's counsel withheld the dismissal of his case only in order to disqualify him as a witness in behalf of the appellant.

Upon hearing the motion for new trial, appellant's attorney, the county attorney and the district attorney were witnesses. From the testimony of the appellant's attorney and the county attorney, it appears that an understanding was reached between them to the effect that Rogers would be advised by his attorney to give his testimony, but he would not be informed that immunity was to be extended. That information was to be withheld so that he would not be in a position to declare on the witness stand that he had been promised immunity in consideration of his testimony. As a matter of fact, the understanding that the county attorney and appellant's attorney had was in substance that in consideration of Rogers testifying to facts within his knowledge, he would be given immunity.

The district attorney testified that he would not put Rogers on the stand without the consent of his attorney; that before Rogers went on the stand, he (the District Attorney) had a conversation with him in person in which he told Rogers that he did not want to make any promise of immunity, but using his language, he said: "He (Rogers) could trust to our honor to do the 'right thing' about it." In his testimony the District Attorney also said that Pate's case was still pending on appeal, and that it was his intention to do the "right thing" that is to dismiss the case, when, in his own judgment, it became expedient and proper to do so; that he did not feel constrained to do it at the present term of court.

The law of this State authorized the prosecuting attorney, with the sanction of the judge of the district court, to extend immunity to one who testifies in behalf of the State to facts which he had the privilege of withholding under his constitutional privilege against giving incriminating facts against himself. Camron v. State, 32 Texas Crim. Rep., 180. In the instant case, had Rogers, after testifying, been put upon trial and demanded his immunity, a question different from that which is now presented would arise. In other words, it is conceived that there be a distinction between the right of Rogers to demand the benefit of his contract of immunity and the right of the appellant to insist upon it in his own behalf. Aside from this distinction, it is not made to appear that the contract in question was made with the sanction of the trial judge. On that subject the record is silent. Nor does it appear that the agreement contemplated

the dismissal of the case against Rogers before the final disposition of the case against Pate.

As stated above, the identity of Rogers and appellant as participants in the offense is not controverted. The only contention is that they acted under duress. This was known to both the appellant and Rogers before the appellant was tried, and the statute accorded the appellant the privilege of seeking a severance to the end that Rogers might be first tried in order to vindicate his innocence, and thereby become available as a witness to establish the innocence of the appellant. Having gone to trial with the knowledge of these facts, and without demanding a severance, it would seem that the diligence of the appellant to secure the testimony of Rogers would be insufficient. The evidence of Rogers is not newly discovered in a strict sense. Appellant does not so contend, but insists that by reason of things transpiring after his own trial, he is in a position to demand that the prosecution against Rogers be dismissed so that Rogers may be compelled to testify in appellant's behalf. If he had originally sought to obtain the testimony of Rogers by means of severance and been denied this privilege or been forced to submit to a trial before Rogers, a different aspect would appear, but having exercised no diligence to secure the testimony of Rogers before his own trial, he is not in a position to demand a new trial in order to secure the testimony. Particularly is this true in the state of the record, which leaves doubtful the right of Rogers under the contract that he made to demand at this time a dismissal of the case against him.

Discovering no error, an affirmance of the judgment is ordered.

*Affirmed.*

ON REHEARING.

June 21, 1922.

HAWKINS, JUDGE.—In his motion for rehearing appellant questions the correctness of our original opinion in so far as it is intimated therein that his right to have the testimony of his codefendant Rogers depended upon whether he had filed a motion for severance requesting that Rogers be first place upon trial. Upon reconsideration we are inclined to agree with appellant's contention that it comes within the rule in Huebner v. State, 3 Texas Crim. App., 458, and which is stated by Mr. Branch in his Ann. P. C., page 375, Section 733, as follows: "Where two defendants are jointly indicted and one is tried and convicted, and subsequently the other is tried and acquitted, or the prosecution against him is dismissed, in a proper case a new trial will be granted the former to enable him to obtain the testimony of the latter, where it appears that the new evidence which the law had formerly placed beyond his reach is legal

competent and material to his defense." (See cases cited under this Section).

If the agreement between counsel for the State and the attorney for Rogers contemplated the dismissal of the prosecution against Rogers before appellant's motion for new trial was acted on, and the dismissal was purposely delayed to prevent appellant from securing a new trial, we would be inclined to hold it error calling for a reversal. However, we cannot say the record shows this to be true. The agreement with reference to using Rogers as a witness and ultimately dismissing his case was wholly with reference to Pate's case. Thompson (Rogers' attorney) says the attorney for the State said he would take care of Rogers' case the next week after Pate was tried, and from this he understood it would be dismissed the next week. State's counsel says he has no recollection of promising to dismiss it at any particular time, but reserved the right to exercise his own judgment as to when the order should be made. If the Pate case was appealed we think the district attorney could properly delay final disposition of Rogers' case until the appeal in Pate's case was determined. The evidence taken on the motion for new trial at most raises an issue of fact as to when Rogers' case was to be dismissed, which we are not called upon to decide. The State may not have believed the statements of Rogers and Dollar that Pate had compelled them by duress to participate in the robbery. The parties robbed denied any such state of affairs, but they could not identify Pate, and the evidence showed that he used the pistol in the robbery. The State may have been willing to use Rogers in order to identify Pate without agreeing that Rogers' and Dollar's story about the duress was true. In the light of all the evidence we do not construe the district attorney's statement that, "I am not going to dismiss the case just to give Ira Dollar a new trial," to mean that he was withholding the dismissal to deprive him of a new trial, but rather that he did not feel called upon under the agreement to enter it then to enable him to secure one. We are of opinion the record will not justify us in holding that the prosecution against Rogers should have been dismissed before the motion for new trial in the instant case was acted upon. It therefore follows that we cannot regard him as a codefendant against whom the prosecution had been dismissed.

Believing the former affirmance was the correct disposition of the case, the motion for rehearing will be overruled.

*Overruled.*