Alisa GRAHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–355 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 4, 1997.

Decided March 4, 1998.

Ed Lieck, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

Alisa Graham pleaded guilty to Aggravated Kidnapping. The trial court assessed punishment at ten years' confinement in the Texas Department of Criminal Justice—Institutional Division. Graham brings nine points of error.[1]

On February 4, 1995, Rick Baxter was beaten and abducted in the Highland Oak Trailer Park in Lumberton, Texas. The next day, Officer Randy Martin of the Hardin County Sheriff's Department, in response to a call about a fight, went to Graham's trailer located at the same park. Neighbors had reported seeing some men coming out of Graham's trailer carrying a body rolled up in a rug. Martin found blood in Graham's trailer. Several days later, Graham and her friend Jayme Slankard requested to meet with Officer Martin. Graham, Slankard, Martin and Captain Fred Minton of the Hardin County Sheriff's Department met at a local fast food restaurant. At the meeting, Graham advised the officers that she had important information about a crime but would not give a statement unless she and Slankard were given immunity from prosecution. Hardin County Sheriff H.R. Holzapfel drafted and signed a letter dated February 8, 1994, guaranteeing that Graham and Slankard would not be prosecuted for the alleged murder of Baxter in return for their full cooperation in the investigation and prosecution of the actors and suspects involved. Slankard and Graham then gave videotaped statements regarding the murder of Rick Baxter. These statements led investigators to Baxter's body, found in Jefferson County, Texas, the county where Baxter died.

Several days later, Investigator Mitch Woods of the Jefferson County District Attorney's office contacted Officer Martin and asked him to locate Graham and Slankard so that he could "go back over their statements." When Graham arrived in Jefferson County to meet with Woods, she was arrested. It is undisputed that Jefferson County officials never negotiated or discussed immunity with Graham.[2]

## PLEA IN BAR

■ In points of error one through four, Graham alleges the trial court committed reversible error by not granting her Plea in Bar of Prosecution based on the State's promise of immunity from prosecution in exchange for information of a crime unknown to the State. She contends the trial court, in denying her Plea in Bar, violated her self-incrimination and due process rights under the Texas and United States Constitutions.

In her Plea in Bar, Graham argued that prosecution of her case should be barred because she was granted immunity regarding the prosecution of the offense and all lesser-included offenses. She claimed she was granted transactional and use immunity by one or more agents of the State. In its Findings of Fact and Conclusions of Law, the trial court stated that because the Hardin County District Attorney did not obtain District Court approval and/or approval from the Jefferson County District Attorney, the promise of transactional immunity to Graham was invalid. The trial court further held Graham's oral and video statements, obtained as a result of the attempt to grant transactional immunity, could not be used by

1. Graham initially filed a brief with three points of error. In its reply brief, the State complained that her points were multifarious. With this court's permission, Graham filed two amended briefs adding six new points of error. The State, however, did not file an amended reply brief addressing her six new points error, which, for the most part, have been left unchallenged by the State.

2. Under Texas law, Graham could have been prosecuted in either Hardin or Jefferson County. If a person receives an injury in one county and dies in another by reason of such injury, the offenders may be prosecuted in the county where the injury was received or where the death occurred, or in the county where the dead body is found. TEX.CODE CRIM. PROC. ANN. art. 13.07 (Vernon 1977).

the State in its case in chief because said statements were involuntarily given under the guise of immunity.

■ In the instant case, the record is clear that an agreement for immunity from prosecution was entered into between Graham and the Hardin County Sheriff's Department. Graham argues on appeal that her confession to Hardin County was involuntary because it was founded on a violated promise of immunity and, therefore, her due process and self-incrimination rights under both the Texas and United States Constitutions were violated. We agree that her confession was involuntary. *See Sossamon v. State,* 816 S.W.2d 340, 344 (Tex.Crim.App.1991). As her confession was not admitted at trial, we must determine whether her promise of immunity should have been honored by authorities in Jefferson County.

■ The Court of Criminal Appeals addressed the doctrine of contractual immunity in *Zani v. State,* 701 S.W.2d 249 (Tex.Crim. App.1985). The initial burden is on the defendant to show the existence of an agreement by a preponderance of evidence. *Id.* at 254. Once the initial burden is met, then procedurally, immunity should be treated just like a defense under the Code. *Id.* The burden then shifts to the State to show beyond a reasonable doubt why the agreement is invalid or why prosecution should be allowed despite the agreement. *Id.*

Graham's agreement with Hardin County was exclusive with the Hardin County Sheriff's Department. A rational trier of fact could have found that Graham entered into an agreement with Hardin County, but, since there was no evidence to show an agreement with the Jefferson County's District Attorney's Office, no rational trier of fact could have found an enforceable contract for immunity from prosecution. *Sossamon,* 816 S.W.2d at 344. We, therefore, reject Graham's contention that her Plea in Bar should have been granted by the trial court; there was no immunity agreement between Graham and the Jefferson County District Attorney. The trial court correctly overruled Graham's Plea in Bar of Prosecution. Graham's points of error one through four are overruled.

### ARTICLE 32.02

Points of error five through eight are based on article 32.02 of the Texas Code of Criminal Procedure.[3] In point of error five, Graham alleges the trial court erred in denying her Plea in Bar of prosecution pursuant to its application of article 32.02. In her brief, Graham refers to the following exchange between the trial court judge and the State:

> State: Your Honor, with respect to the grant of immunity, the Court has been provided the law on transactional immunity and it would boggle the mind ... that a court would even have the authority to delegate ... some of its power to a D.A. to grant that transactional immunity.
>
> Court: I think if a judge did that, he'd be going to visit somebody up in Austin.
>
> State: Yes, sir. And I don't think he has the power to do that anyway.

We do not find the above exchange between the prosecutor and the judge to be a ruling or finding in reliance on article 32.02. In its Findings of Facts and Conclusions of Law, the trial court stated: "The prosecution of the defendant is not barred by the attempt to grant defendant transactional immunity due to the failure of the State to obtain District Court approval, and or approval from the Jefferson County District Attorney." The court did not overrule Graham's Plea in Bar because she failed to obtain district court approval of her immunity agreement. Instead, the court found she could be prosecuted because she failed to obtain district court approval *and or* approval from the Jefferson County District Attorney.

---

**3.** The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge. TEX.CODE CRIM. PROC. ANN. art. 32.02 (Vernon 1989)

The law in Texas is that when a prosecutor offers a contract of immunity and the accused fulfills his obligation under the contract, he will be exempt from prosecution. *Sossamon,* 816 S.W.2d at 344; *Zani,* 701 S.W.2d at 253. As stated above, Graham failed to establish by a preponderance of the evidence the existence of an immunity agreement with the Jefferson County District Attorney; the court correctly overruled her plea in bar. We do not find the trial court applied article 32.02 in its decision to deny Graham's plea in bar. Point of error five is overruled.

In points of error six and seven Graham alleges article 32.02 is unconstitutionally vague under the Texas and U.S. Constitutions as it applies to due process and to the promise of immunity. In point of error eight, Graham alleges the trial court erred in its interpretation of article 32.02 because the statute is unconstitutionally vague as to whether the District Court had jurisdiction when she made her immunity agreement.

Under these points of error, Graham argues article 32.02 is unconstitutionally vague, because it does not offer any procedural guidelines as to how or when a prosecutor is to obtain permission for dismissal from the court; because it does not give reasonably clear notice when it is to be applied to pre-indictment settings; and because neither Hardin nor Jefferson County had jurisdiction under article 32.02 to dismiss the case at the time the promise of immunity was made. As we appreciate article 32.02, that statute requires court approval to dismiss a criminal action in pending cases wherein the defendant has already been indicted. *Foster v. State,* 661 S.W.2d 205 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). Consequently, article 32.02 has no application in the current case, and we find nowhere in the record where the trial court based any of its findings on that statute. We, therefore, dismiss Graham's argument concerning its constitutionality. Graham's points of error six through eight are overruled.

## MOTION TO SUPPRESS

In point of error nine, Graham alleges the trial court committed reversible error by not granting her motion to suppress all confessions and evidence obtained by the State as a result of her involuntary statement induced by a promise of immunity. She argues her right against unreasonable searches and seizures under the Fourth amendment was violated and that the State violated her rights under the self-incrimination clause of the Fifth Amendment and due process clause of the Fourteenth Amendment. Graham relies on the "fruit of the poisonous tree" doctrine in support of her arguments.

At the Motion to Suppress hearing, Graham sought to suppress evidence of statements of other persons involved in the crime, the body of the victim, a van used to transport the victim, the murder weapon, a cable, and other items of evidence such as blood samples. The trial court allowed the State to use the evidence Graham sought to suppress because the evidence was also obtained from persons other than Graham. Graham's primary complaint under point of error nine is that Slankard's videotaped statement should not have been allowed in evidence. Graham contends Slankard's statement and the evidence derived from it should be suppressed because they were the result of the promise of a "package deal," i.e., that both Slankard and Graham would receive immunity. She argues the trial court's ruling assumes Slankard would have given Hardin County authorities a statement without the promise of immunity to Graham. Graham also claims Slankard gave her statement after hearing Graham's statement, and, thus, Slankard's information was based on what she heard from Graham, and that there is nothing in the record to indicate Slankard had independent knowledge of the murder weapon, the van, or the location of the body.

We reject Graham's arguments under point of error nine because we do not find that the complained of evidence, other than her own confession, was illegally obtained thus constituting fruit of the poisonous tree. In determining whether evidence is inadmissible as fruit of the poisonous tree, the critical issue is whether the evidence was gained by exploitation of an illegality. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Fuller v. State,* 829

S.W.2d 191, 204 (Tex.Crim.App.1992). Slankard's statement and the evidence derived from it were not obtained by the exploitation of an illegality. To begin with, the record does not support Graham's argument that Slankard would not give a statement unless they received a "package deal." Sheriff Holzapfel merely speculated that one may not have testified without the other. Even assuming Slankard gave her statement only because she and Graham were both promised immunity, Graham may not obtain exclusion of evidence on the grounds that someone else's rights were violated. She may not successfully challenge admissibility of evidence on the basis that the evidence is tainted by some past infringement of Slankard's rights. *United States v. Williams*, 737 F.2d 594, 616 (7th Cir.1984); *Roeder v. State*, 768 S.W.2d 745, 755 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Secondly, Graham's assumption that Slankard's statements were based solely on what she heard after listening to Graham is also mere speculation and is not supported by the record.

Third, at the Motion to Suppress and Plea in Bar hearing, Graham did not show the complained-of evidence was obtained through the use of information she gave in her own confession, which the trial court held was inadmissible. The record reflects Slankard and Graham voluntarily gave videotaped statements or confessions regarding the murder of Baxter. Both approached Hardin County authorities at the same time and gave similar statements. Both identified the other actors involved in the murder and both gave similar accounts of what happened the day of the murder. Both told Hardin County authorities they were present in Graham's trailer when Rick Baxter was severely beaten and both testified to the events that took place following the beating. During the Motion to Suppress and Plea in Bar hearing, Officer Martin testified that Slankard gave Martin the same names of the actors involved as Graham had given. These other suspects gave authorities additional information about the crime as well. We find nothing in the record indicating that Slankard's statement and the evidence derived from it were obtained through information Graham gave to the police; thus, they do not constitute fruits of the poisonous tree.

 The court's ruling on the admission or exclusion of evidence will not be disturbed unless the record clearly shows an abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the trial court's ruling. *Wallace v. State*, 932 S.W.2d 519, 520 (Tex.App.—Tyler 1995, pet. ref'd). We will not disturb the trial court's ruling on appeal because we find no evidence in the record that the court abused its discretion.

Graham next argues under point of error nine that the above-mentioned evidence should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure.[4] Graham cites *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex.Crim.App.1996) and *Garcia v. State*, 829 S.W.2d 796 (Tex.Crim.App.1992) for the proposition that under article 38.23, once it is established that evidence was obtained illegally, it must be excluded. As stated above, we find nothing in the record demonstrating the complained-of evidence was illegally obtained. Consequently, we reject this argument as well. Graham's ninth point of error is overruled.

The judgment of the trial court is AFFIRMED.

AFFIRMED.

STOVER, Justice, dissenting.

I respectfully dissent to the majority opinion, because I believe the trial court erred in denying appellant's Motion for Plea of Immunity and Plea in Bar of Prosecution.

As noted in the majority opinion, Graham, along with Jayme Slankard, was promised immunity from prosecution regarding the murder of Rick Baxter by the sheriff and

---

4. "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case...." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp. Pamph.1998).

district attorney of Hardin County. Testimony from Officer Randy Martin of the Hardin County Sheriff's Department reveals appellant and Slankard were guaranteed full transactional immunity in exchange for their testimony and full cooperation. In a video tape made by Sheriff Holzapfel of Hardin County of Graham's statement, the sheriff stated that in return for her cooperation, Graham would not "be prosecuted in this matter." The written immunity agreement states that Graham and Slankard would not be prosecuted for the alleged *murder* of Rick Baxter. However, in response to defense counsel's question as to whether the Hardin County authorities intended to convey to Graham that she would not be "prosecuted, period," Officer Martin responded: "Yes, sir, that's correct." In reliance on the promise of immunity, Graham gave her statement to Hardin County authorities. The contents of that statement included such information as the fact of the murder itself, the identity of the victim, those involved in the murder, and the approximate location of the body. Based on that information, the police were also able to determine the murder weapon and to find the van in which Baxter was driven and beaten prior to his death.

It is undisputed that appellant was not granted or offered immunity by any court or by Jefferson County authorities. Immunity was offered only by the Hardin County sheriff and district attorney. Under the unique circumstances of this case, Graham relied on the agreement made between her and the Hardin County officials and provided the information regarding the murder of Rick Baxter, only to find out later that the case would be tried in Jefferson County. The immunity issue by that time was a moot point; Jefferson County officers had no need to offer immunity, since they already had the benefits of her statement which was given in reliance on the immunity granted by the Hardin County officials.

The majority finds that, because there was no valid agreement with Jefferson County, the jurisdiction which ultimately tried the case, Graham can still be prosecuted for a crime connected with Mr. Baxter's death.[1] In other words, one county's immunity agreement cannot bind another county. *See Sossamon v. State*, 816 S.W.2d 340 (Tex. Crim.App.1991). I disagree with the majority's disposition of the matter, however, and conclude that the failure to abide by the immunity agreement is a violation of appellant's due process rights under both the United States and Texas constitutions.

Unquestionably, the proper procedures were not followed in order to accord Graham a valid grant of immunity in Jefferson County. However, under the doctrine of "equitable immunity," an informal promise of immunity can be enforced by the judiciary. In my view, because of the violation of due process rights, this is an appropriate case for the application of the equitable immunity doctrine, though the doctrine admittedly has not been adopted by Texas courts. The Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have all addressed the concept of equitable immunity; however, with the exception of the Eleventh Circuit, none has seen fit to apply it.[2]

Under the concept of "equitable immunity," courts may enforce informal grants of transactional immunity where:

(1) an agreement was made;

(2) the defendant has performed on his side; and

(3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government.

---

**1.** The majority correctly concludes appellant's statement was involuntary and was properly suppressed by the trial court. However, the suppression of appellant's statement does not cure the trial court's error in failing to grant her Plea of Immunity and Plea in Bar of Prosecution.

**2.** *See Reed v. United States*, 106 F.3d 231, 235 (8th Cir.1997); *United States v. McHan*, 101 F.3d

1027, 1034–35 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997); *United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir.1994); *United States v. Weaver*, 905 F.2d 1466, 1471–74 (11th Cir.1990); *United States v. Short*, 671 F.2d 178, 187 (6th Cir.1982), *United States v. Weiss*, 599 F.2d 730, 735 n. 9 (5th Cir.1979).

*Rowe v. Griffin,* 676 F.2d 524, 527–28 (11th Cir.1982). In the instant case, each of these conditions are met. As noted above, there was an agreement by the appellant and the Hardin County sheriff and district attorney that appellant would "not be prosecuted, period" regarding the murder of Rick Baxter if Graham fully cooperated in the investigation and prosecution of the people involved in this act. Appellant performed her part of the agreement. The prosecution of Graham for the aggravated kidnapping of Rick Baxter is directly related to the offense in which Graham assisted in the investigation.

The underlying principle in the concept of equitable immunity is that "when a promise of immunity induces a defendant to ... cooperate with the government to his detriment, due process requires that the prosecutor's promise be fulfilled." *United States v. Fuzer,* 18 F.3d 517, 521 (7th Cir.1994). In effect, the assurances of immunity from prosecution in return for the informant's testimony are the functional equivalent of a plea bargain and failure of the State to abide by the agreement violates a defendant's due process rights. It matters not that the majority concludes appellant's statement was involuntary and was correctly suppressed by the trial court. Even though appellant's statement was not used, the statement of Jayme Slankard and the other evidence flowing from Graham's statement were not suppressed. Under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that evidence flowing from the statement of Graham is fruit of the poisonous tree. The other evidence was obtained by the exploitation of an illegality—namely appellant's involuntary statement. Moreover, the suppression of Graham's statement still does not give her the benefit of her bargain with the State—namely, freedom from prosecution through transactional immunity.

For the above stated reasons, I respectfully dissent.