**Alisa GRAHAM, Appellant,**

v.

**The STATE of Texas.**

**No. 0606–98.**

Court of Criminal Appeals of Texas.

June 2, 1999.

---

Stephen C. Taylor, Galveston, Ed D. Lieck, Beaumont, for appellant.

Rodney D. Conerly, Assist. DA, Beaumont, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

WOMACK, J., delivered the opinion of the Court in which McCORMICK, P.J., KELLER, HOLLAND, and KEASLER, JJ., joined.

Alisa Graham's neighbors saw some men carrying a body, rolled up in a rug, out of her residence. They reported this to the Hardin County Sheriff's Department. When deputies met with Graham, she told them that she would not give a statement unless she and her friend were given immunity from prosecution. The sheriff gave her a written guaranty that, in return for their full cooperation in the investigation and prosecution of the offense, they would not be prosecuted. Graham and her friend then gave statements. The body that had been carried from Graham's residence was found in Jefferson County, and Graham was indicted in Jefferson County for aggravated kidnapping.

Graham entered a "plea in bar of prosecution," based on the Hardin County sheriff's guaranty of immunity. She also moved to suppress her statement and evidence which she said was obtained by the State's use of the statement. The district court ruled that the sheriff's guaranty did not amount to a grant of immunity because it was not approved by a district court. The court also refused to suppress certain items of evidence, although Graham's

statement was not admitted into evidence. Graham then pleaded guilty and appealed the pre-trial rulings. The court of appeals affirmed, holding that there was an "agreement for immunity from prosecution" but that it was "exclusive with the Hardin County Sheriff's Department." *Graham v. State*, 964 S.W.2d 738, 740 (Tex.App.—Beaumont 1998).

"[S]ince there was no evidence to show an agreement with the Jefferson County District Attorney's Office, no rational trier of fact could have found an enforceable contract for immunity from prosecution. *Sossamon [v. State]*, 816 S.W.2d [340], 344 [1991]. We, therefore, reject Graham's contention that her Plea in Bar should have been granted by the trial court; there was no immunity agreement between Graham and the Jefferson County District Attorney." *Ibid.*

A dissenting justice expressed the view that the Hardin County agreement should have been enforced under the concept of "equitable immunity." *Id.* at 742 (Stover, J., dissenting).

The issue in the present case is whether one county's agreement not to prosecute, made without judicial approval, can bind another county not to prosecute.

In the great majority of American jurisdictions, the immunity power is exercised by the prosecutor within the regulations of statutes.

The practice of granting immunity from prosecution to a criminal defendant or other witness, as a means of obtaining testimony regarding a particular crime and the involvement of others therein, has been evidenced from the earliest reportings of the English Courts. The continuation of these early practices has been formalized in a wide variety of state and federal statutes providing, usually with great precision, for the granting of immunity in certain prescribed circumstances. ... Where the statute governing the grant of immunity is specific as to the circumstances in which such immunity may be granted, many jurisdictions have held that the prosecuting attorney, while acting as the instrument of the state, is merely the conduit through which the immunity established by the legislative arm of government passes to the attesting witness. Where this view is taken, it has generally been held that a prosecuting attorney is not empowered, solely by virtue of his office, to grant immunity to a witness.

Robert M. Schoenhaus, Annotation,*Prosecutor's Power to Grant Prosecution Witness Immunity from Prosecution*, 4 A.L.R.4th 1221, 1225(1998) (footnotes omitted). Texas is the most notable exception to the standard American model. *See id.* at 1226.[1]

 In Texas, the power to grant immunity from prosecution is statutory rather than constitutional. *Ferrantello v. State*, 158 Tex. Crim. 471, 476, 256 S.W.2d 587, 591 (1953). Texas has never had a general statute that specifically regulated the granting of immunity from prosecution.[2] Instead, the authority to grant im-

1. For this reason, Judge Johnson's general statements about prosecutors' discretion not to prosecute (*post* at 657–58), which are supported by citation to a decision of the Supreme Court of the United States, have little relevance to Texas law.

2. A few statutes provide, or provided, immunity from prosecution to certain witnesses.
 A person who gives truthful evidence to either house or a committee of the legislature while claiming that the evidence may be incriminatory, may not be indicted or prosecut-ed about the subject of the evidence. *See* Tex. Gov't Code § 301.025(c).
 A party to an offense of prostitution or gambling may not be prosecuted for any offense about which the party is required to give evidence. *See* Tex. Penal Code §§ 44.06(b), 47.08(b).
 Under the former Prohibition Law, a person who was required to testify could not be punished for acts disclosed by the testimony. *See* Statewide Intoxicating Liquor Prohibition Law, 36th Leg., 2d C.S., ch. 78, § 40, 1919 Tex. Gen. Laws 240, *repealed by* Texas Liquor

munity is derived from the statutes that authorize officers of the Judicial Department to dismiss prosecutions. *See Zani v. State,* 701 S.W.2d 249, 253 (Tex.Cr.App. 1985) (the "rationale for such a grant [of immunity from prosecution] has now been embodied at Art.32.02"). Conceptually, therefore, a grant of immunity from prosecution should be thought of as "a prosecutorial promise to dismiss the case." Robert O. Dawson & George E. Dix, *Texas Criminal Procedure* 670 (1984). The county attorney or district attorney, who is an officer of the Judicial Department, has the authority to dismiss a prosecution, but only with the approval of the court. *See* Code of Criminal Procedure article 32.02.[3] Therefore a grant of immunity from prosecution also requires the approval of the court. Dawson & Dix, *supra.*

This point was first decided in *Camron v. State,* 32 Tex. Crim. 180, 182, 22 S.W. 682, 682 (1893):

The common practice in American courts is to commit the question of receiving or rejecting an accomplice, and the further question of his immunity from punishment, solely to the discretion of the prosecuting officer, who acts by nol. pros. In those States where a nol. pros. can be only entered with the consent of the court, as in Texas, the court must, of course, exercise supervision over the question.

■ When a court has not approved a prosecutor's agreement to grant immunity from prosecution, there is no grant of immunity on which a defendant can rely. *See Carlisle v. State,* 138 Tex. Crim. 530, 532, 137 S.W.2d 782, 783 (1940):

Appellant also complains because the court overruled his plea in the nature of a plea in abatement to the prosecution. He contends that the court should have sustained his plea and dismissed the prosecution, because the district attorney promised appellant immunity if he did testify for the State on the trial of a co-defendant. We do not believe the court committed any error in this respect, inasmuch as it does not appear that the district attorney, with the approval of the court, agreed to dismiss the prosecution. The authorities in this State hold that the agreement of the trial judge to such a proceeding is necessary. See *Turney v. State,* [40 Tex. Crim. 561,] 51 S.W. 243 [ (1899) ]; *Hardin v. State,* 12 Tex.App. [186], 189 [ (1882) ]; *Camron v. State [sic ],* 32 Tex. Crim. 180, [22] S.W. [682 (1893) ]; [4] *Bowden v. State,* 1 Tex.App. [137,] 144 [ (1876) ].

*Accord, Wechsler v. State,* 172 Tex. Crim. 559, 361 S.W.2d 379 (1962); *Washburn v. State,* 164 Tex. Crim. 448, 299 S.W.2d 706 (1956); *Henderson v. State,* 103 Tex.Crim. 502, 281 S.W. 557 (1926); *Dollar v. State,* 92 Tex.Crim. 254, 242 S.W. 733 (1922) (alternative ground); *Messenger v. State,* 81 Tex.Crim. 465, 198 S.W. 330 (1917); *Ex parte Higgins,* 71 Tex. Crim. 618, 160 S.W. 696 (1913); *Reagan v.*

Control Act, 44th Leg., 2d C.S., ch. 467, § 49, 1935 Tex. Gen. Laws 1826.

**3.** "No case shall be dismissed without the consent of the presiding judge." Tex.Code Crim. Proc. art. 32.02.

The requirement of judicial approval dates from the first Code of Criminal Procedure, which provided, "The district or county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, which reasons shall be incorporated in the judgment of dismissal; and no case shall be dismissed without the permission of the presiding judge, who shall be satisfied that the

reasons so stated are good and sufficient to authorize such dismissal." Tex.Code Crim. Proc. (1856) art. 38.

The unusual placement of the Texas prosecutor in the judicial branch, and the unusual requirement that a court must approve the dismissal of a prosecution, is another reason why Judge Johnson's discussion (*post* at 657–58) has little relevance to Texas law.

**4.** The "Cameron" case was heard twice by this court. In the original appeal, the appellant's name was reported as "Camron." See 32 Tex. Crim. 180, 22 S.W. 682 (1893). After a retrial, his name was reported as "Cameron." See 25 S.W. 288 (Tex.Crim.1894).

*State,* 49 Tex. Crim. 443, 93 S.W. 733 (1906); *Cox v. State,* 69 S.W. 145 (Tex.Cr. App.1902); *Ex parte Gibson,* 42 Tex. Crim. 653, 62 S.W. 755 (1901); *Vincent v. State,* 55 S.W. 819, 820 (Tex.Cr.App.1900); *Ex parte Greenhaw,* 41 Tex. Crim. 278, 53 S.W. 1024 (1899); *Tullis v. State,* 41 Tex. Crim. 87, 52 S.W. 83 (1899).

This rule binds the State as well as the defendant, as our opinion in *Washburn v. State, supra,* 164 Tex. Crim. at 449–50, 299 S.W.2d at 707, demonstrates:

> The state takes the position that no error is shown [in its questioning a witness, who invoked his right to remain silent before the jury,] on the ground that the witness, Andrew H. Nelson, had been granted immunity. The state's contention in this respect cannot be sustained because the record shows only an offer of immunity by the prosecuting attorney. It fails to show the approval of the trial court. Proof of this additional fact is essential in order to establish immunity.

The only opinion of this court in the twentieth century to have treated a prosecutor's promise not to prosecute as an enforceable immunity agreement without the approval of the district court is the one on which the court of appeals relied— *Sossamon v. State,* 816 S.W.2d 340 (Tex. Cr.App.1991). Sossaman claimed that the district attorneys of four districts had promised him immunity from prosecution in return for his statements about robberies. One of the district attorneys obtained an indictment. Sossaman's motion to quash the indictment was denied after the district attorney denied agreeing not to prosecute. The *Sossamon* Court said that if there had been such an agreement, it would have been enforceable (*id.* at 343):

> We must determine whether, under the above stated facts, there was a valid, enforceable contract for immunity. The

State contends that the Court of Appeals erred in concluding that appellant was entitled to immunity because the trial court, having jurisdiction over the case, did not approve of the agreement.

The doctrine of contractual immunity was thoroughly addressed in *Zani v. State,* 701 S.W.2d 249 (Tex.Cr.App.1985). Therein we recognized the distinction between immunity which requires the trial court participation in order to compel the testimony of a witness, and immunity based upon a contractual arrangement between the accused and the appropriate prosecutorial authority. Under the latter theory, when a prosecutor offers a contract of immunity and the accused fulfills his obligation under the contract he will be exempt from prosecution. *Zani,* 701 S.W.2d at 253.[5]

This was a misreading of *Zani.* The *Zani* Court did notice a difference between a grant of immunity that is used to compel testimony from a witness who claims that the testimony will be self-incriminatory, and an immunity agreement that is made to induce an accomplice to give information. *Zani v. State, supra,* 701 S.W.2d at 253. But it did not hold, and could not have held, that an agreement with the prosecutor could be enforced without the approval of the court, because the *Zani* case involved an immunity agreement that had been approved by a court. After interviewing Zani in Mexico, "One of the several officers present returned to Texas to have an immunity agreement prepared, which was signed by the district attorney *and two district judges* and airmailed back to Acapulco." *Id.* at 250 (emphasis added). And the *Zani* Court expressly noted the requirement for approval by a court:

> Though a procedure for the granting of immunity has not been expressly provided by the Legislature of this State, in *Ex Parte Muncy,* 72 Tex.Crim. 541, 163

---

**5.** After deciding that such an agreement with the district attorney would be an enforceable immunity agreement, the Court held that Sossamon had failed to meet his initial burden to show the existence of an agreement. "[T]here was no evidence to show an agreement with the ... District Attorney's Office." *Sossamon v. State, supra,* 816 S.W.2d at 344.

S.W. 29 (1914), the Court made clear that such a procedure was to be recognized. In *Muncy, supra,* 163 S.W. at 35, the Court said, "The right (to grant immunity) under our law of the district attorney *with the knowledge and consent of the district judge,* to guarantee immunity from prosecution and punishment has never been seriously questioned in this State." The previously held rationale for such a grant has now been embodied at Art. 32.02, V.A.C.C.P. *Id.* at 253 (emphasis added).

The *Zani* case does not support the *Sossamon* Court's decision to treat an agreement for immunity from prosecution that had not been approved by a court in the same way that an approved grant of immunity is treated. The *Sossamon* decision is also contrary to the well-settled rule that is stated in *Zani* and the other precedents we have cited today. Just as the *Sossamon* Court was wrong to treat the prosecutor's unapproved agreement as a grant of immunity, the court of appeals was wrong to treat the unapproved agreement with appellant as a grant of immunity. The trial judge correctly held that without the approval of the court the district attorney had no authority to grant immunity from prosecution to appellant.

■ The authorities and reasoning which this Court has developed over the past century support the conclusion that appellant did not make an enforceable immunity agreement. Because there was no judicial approval of the agreement in this case, the Hardin County prosecutor could not and did not bind his office to refrain from prosecuting appellant for the murder. It follows that Jefferson County was not bound to refrain from prosecution.

■ But even though a prosecutor's agreement to transactional immunity is not, absent court approval, binding, a prosecutor has discretion to decide what evidence to introduce in a trial. Court approval is not required for such matters, and so it appears that a prosecutor can engage in a binding agreement to refrain from using particular evidence. That is, he may bind himself to an agreement for use immunity without court approval.

■ In this case, Hardin County was bound to the extent that the agreement conferred use immunity. Evidence obtained from appellant pursuant to the agreement could not be used against her at trial in Hardin County. And regardless of whether Jefferson County could be bound by Hardin County's use-immunity agreement, Jefferson County in fact did not use that evidence. The trial court held that the statements appellant made pursuant to her agreement with Hardin County were given involuntarily and could not be used against her in the State's case-in-chief. So, appellant received the benefit of her agreement to the full extent to which she was or may have been entitled.[6]

■ We reject appellant's suggestion that we adopt a doctrine of "equitable immunity" as advocated by Justice Stover in his dissenting opinion in the court below. Something like such a doctrine underlay the early decision in *Camron v. State,* 32 Tex.Crim. 180, 22 S.W. 682 (1893), to give a defendant the benefit of a prosecutorial promise of immunity that had not been approved by a court. But this court did not adhere to that rule, and soon announced, "A plea of this kind is always subject to the approval of the court before it becomes even equitably binding on the state." *Vincent v. State,* 55 S.W. 819, 820 (Tex.Cr.App.1900). *Cf. Fleming v. State,* 28 Tex.App. 234, 236, 12 S.W. 605–06 (1889) (When a promise not to prosecute was not submitted to the court for approval, "the county attorney had no authority to make such a contract. This being so, the state, the principal, was not bound by the contract, there being no authority in

6. The Court of Appeals found that none of the evidence introduced at trial was a fruit of appellant's cooperation with Hardin County, but was obtained from an independent source—statements of Jayme Slankard. *Graham,* 964 S.W.2d at 741–742.

the agent to thus bind it; and, while the agent was acting within the apparent scope of his authority, the appellant knew, or was bound to know, that he was exceeding his powers, for she is held to know the law"). As the dissenting opinion in the court of appeals pointed out, only one court in the United States has applied a doctrine of equitable immunity. We reject the doctrine today.

Because there was no enforceable immunity agreement in this case, there was no occasion for the court of appeals (or the *Sossamon* Court, see 816 S.W.2d at 344) to consider whether an immunity agreement with one judicial district binds the judicial officers in another judicial district.

To the extent that the accused was misled to her detriment by the agreement with Hardin County and its officials' promise of transactional immunity, her remedy was achieved by suppression of the fruits of her cooperation that resulted from that agreement.

The judgments of the courts below are affirmed.

JOHNSON, J., filed a concurring opinion in which MEYERS and PRICE, JJ., joined.

MANSFIELD, J., not participating.

JOHNSON, J., filed a concurring opinion in which MEYERS and PRICE, JJ., joined.

The transaction which occurred between appellant and the authorities in Hardin County is characterized by the Court of Appeals and by the majority as an "immunity agreement." *Graham v. State*, 964 S.W.2d 738, 740–741, 743 (Tex.App.—Beaumont 1998, pet. granted). However, it is more appropriately described as an agreement not to prosecute, i.e., a choice by the Hardin County District Attorney's

Office not to prosecute appellant, as a matter of prosecutorial discretion, based on her cooperation. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion") (footnote omitted). Texas prosecutors frequently use such discretion in declining to prosecute undercover police officers who purchase illegal drugs in the process of gathering evidence and, under a literal reading of the statute, are therefore in violation of the laws prohibiting possession of controlled substances.

The majority defines a grant of immunity as "a prosecutorial promise to dismiss a case." *Ante*, at 654. However, based on the record and the opinion of the Court of Appeals in the instant case, it appears that the prosecutor in Hardin County did not promise to dismiss a case, but rather elected not to file charges against appellant. *Graham v. State*, 964 S.W.2d 738, 739 (Tex.App.—Beaumont 1998, pet. granted). Hence, he could not agree to dismiss such charges under a "grant of immunity." The majority would require the approval of a judge, yet when, as here, there are no formal charges, no court has jurisdiction to enter such an order.

When viewed as a matter of prosecutorial discretion, i.e., an agreement not to file charges, it is clear that the choice to decline to prosecute is within the discretion of the District Attorney, *see Bordenkircher, supra*, and the agreement does not require approval by a court in order to be valid and enforceable.[1] Therefore, the agreement between appellant and the Hardin County District Attorney, that no

---

1. The confusion between the terms "immunity" and "agreement not to prosecute" appears to stem from our case law. *See, e.g., Sossamon v. State*, 816 S.W.2d 340, 343 (Tex. Crim.App.1991) (using "agreement not to prosecute" and "contract for immunity" interchangeably, and delineating two kinds of "immunity"). Today, the majority only exacerbates this confusion by continuing to use these terms interchangeably.

charges would be filed against Appellant if she cooperated, was enforceable and did not require validation by a judge.[2]

The dispositive issue here is whether an agreement not to prosecute existed between the Jefferson County District Attorney's Office and appellant.[3] At most, there appears to be some communication between the Hardin County Sheriff's Department and an investigator from the Jefferson County District Attorney's Office. *Id.* Appellant is unable to point to any contact or discussion she had with Jefferson County authorities about the murder until after her arrest in Jefferson County.

The Hardin County Sheriff testified that, at the time the agreement not to prosecute was made, the authorities in Hardin County did not know that there had been a murder or that the body would be found in another county. (R. at 61.) He could not have known that appellant might desire another non-prosecution agreement with another county. However, appellant knew both that a murder had been committed and that the body had been left in Jefferson County. There is nothing in the record to suggest that she apprised Hardin County, before the agreement was made, that she also wanted an agreement not to prosecute from the authorities in Jefferson County. Neither can appellant show that she would not have been charged in Jefferson County but for the confession she gave in reliance on her agreement with Hardin County. The trial court in Jefferson County suppressed her confession, and the State proceeded on the basis of similar testimony from another witness.

Therefore, because the Court of Appeals was correct in finding that an agreement not to prosecute did not exist between appellant and Jefferson County, I concur in the judgment of the Court.

2. The majority asserts that Texas is a "notable exception to the standard American model." *Ante,* at 654 & n. 3. Texas is in the minority as to the standard American model of *immunity agreements,* but it is not alone in requiring court approval. *See, e.g., State v. Cheadle,* 101 N.M. 282, 681 P.2d 708, 712 (1983) (grant of immunity must follow rule of criminal procedure requiring written application by district attorney and written order by trial court ordering person to testify), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1930, 80 L.Ed.2d 475 (1984); *State v. Hargis,* 328 So.2d 479, 480 (Fla.Dist.App.1976) (immunity agreement made without consent of court may not be pled in bar of adjudication of guilt, and defendant may be placed on trial in violation of agreement). However, today's case concerns not an immunity agreement, but an agreement not to prosecute, a very different issue.

3. Neither the placement of the prosecutor in the judicial branch nor the "unusual" requirement that a court approve a dismissal (*see ante,* at 655 n. 5) has relevance when there were no charges subject to dismissal and judicial approval.