NO. 07-97-0070-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 2, 2002

_____

SEAN ALLEN SMITH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 9444-C; HONORABLE PATRICK A. PIRTLE, JUDGE

_____

**ON REMAND FROM THE COURT OF CRIMINAL APPEALS**

Before BOYD, C.J., and QUINN and REAVIS, JJ.

In our previous opinion, we affirmed the murder conviction of appellant Sean Allen

Smith.  Smith v. State, 979 S.W.2d 379 (Tex.App.--Amarillo 1998).  Appellant presented the

following issues on direct appeal: (1) the trial court erred in refusing to enforce a non-

prosecution agreement entered into between himself and the prosecutor; (2) the trial court

erred in finding that the order of dismissal was not with prejudice; and (3) the trial court erred

in not finding as a matter of law that his prosecution was barred as a result of the agreement entered into between him and the State. After granting appellant's petition for discretionary review to address the issue of what is demanded by the requirement that the trial court "approve" an immunity agreement, on March 13, 2002, the Court of Criminal Appeals held that the order of dismissal was not rendered unenforceable solely because it did not recite that it was "with prejudice," and article 32.02 of the Texas Code of Criminal Procedure Annotated (Vernon 1989) does not require that the trial judge be aware of the specific terms of an immunity agreement for it to be enforceable. *See* Smith v. State, 70 S.W.3d 848, 853, 855 (Tex.Cr.App. 2002). The Court reversed our judgment and remanded the cause for us to consider the following issues: (1) the existence of, and (2) performance under, the immunity agreement. *Id*. at 855. Our analysis of these two issues will also require us to determine whether the procedure and burden of proof allocation set out in Zani v. State, 701 S.W.2d 249, 254 (Tex.Cr.App. 1985) is controlling.[1] As an intermediate appellate court, we limit our review to these two issues and follow the interpretation of the law by the Court of Criminal Appeals. Based upon the rationale expressed herein, we reverse the judgment of conviction and render the judgment the trial court should have rendered. Tex. R. App. P. 43.2(c). The procedural and factual history of the underlying proceeding is discussed in the

---

[1]In our prior opinion, we distinguished *Zani* noting that the district judges who approved the written immunity agreement were aware of its specific terms. *Smith*, 979 S.W.2d at 382. Now, because the Court of Criminal Appeals has held that under article 32.02 knowledge of the specific terms of the agreement is not essential for it to be enforceable, the factual distinctions we suggested in our first opinion do not render *Zani* inapplicable.

2

two published opinions cited above. Thus, our review of the facts is limited to those necessary to disposition of the issues the Court has directed us to consider.

On May 20, 1990, appellant and five other persons were indicted for the capital murder of Hilton Raymond Merriman, Sr. Concerning appellant, the proceeding was dismissed on April 20, 1993, pursuant to an immunity agreement between himself and the then District Attorney, Randall Sherrod. After newly elected District Attorney James Farren took office on January 1, 1995, he conducted further investigation and obtained a second indictment against appellant on August 23, 1995. Based on the immunity agreement with the former prosecutor, appellant filed an amended motion to enforce the agreement on September 12, 1996. At a pretrial hearing held on September 17, 1996, appellant presented testimony from his former attorney, the former prosecutor, a former assistant district attorney, and a special prosecutor in charge of prosecuting a co-defendant. The State, however, did not file any written response to appellant's motion nor present any witnesses or evidence at the pretrial hearing.

By his opening remarks, defense counsel stated appellant's version of the agreement and summarized the evidence in support thereof. Then, without outlining the State's version of the agreement, among other things, counsel for the State requested:[2]

> the Court to consider reserving a decision until the State rests in the trial. At that time, the Court will have heard all of the State's evidence in its case-in-chief and will be in a much better position to make a decision about whether or

_____

[2]From our review of the record, it does not appear that the trial court made a ruling on the State's request.

3

not the evidence indicates that Sean Smith deceived the State in entering into this agreement. If the State fails to do that, then the Court can rule on the Defense motion at that time.

After appellant examined his four witnesses and rested, counsel for the State announced:

We have nothing, Your Honor, other than cross-examination.

Upon completion of defense counsel's argument, counsel for the State argued and again requested that it be allowed to present evidence at trial that appellant breached the agreement. Defense counsel argued in response to the State's argument as follows:

Mr. Farren did not put on any evidence today to–through the witness stand, that Mr. Smith had lied or that he has additional evidence to show that there was fraud in the inducement and this agreement being entered.

The trial court interrupted defense counsel and announced:[3]

THE COURT: Let me stop you. I intentionally stopped Mr. Farren from doing that because I do not want to try this case today, only to have to try it to a jury later. If that is a bone of contention, I mean, we can cross that bridge. But, I just want the record to reflect that I stopped Mr. Farren from presenting such testimony as being cumulative and unnecessary and needless consumption of the Court's time.

---

[3]The record does not show what was before the trial court when it prohibited the State from presenting testimony.

Then, when argument was completed, without a motion by the State and notwithstanding the State's two requests that it be allowed to present its evidence during trial, the trial court announced:

> Counsel, the Court having considered the evidence and arguments of Counsel, finds that the dismissal in this cause was not with prejudice, but was merely in the interest of justice. In the interest of justice, the Court finds that the Defendant's Motion to Enforce the Plea Bargain Agreement is not well taken and will deny that motion. . . .

The State claims the trial court denied the motion because (1) there was no agreement because there was never a meeting of the minds as to its terms, (2) if there was an agreement, its terms were not binding upon the trial court because it never approved the agreement,[4] and (3) the dismissal in question was without prejudice. However, the State's reference to the record does not support alleged findings (1) and (2). The trial court's order denying appellant's motion on September 17, 1996, did not state any grounds or reasons therefor and was signed by the trial court without the presentation of any evidence by the State as to the terms of its version of the agreement or appellant's alleged non-performance of the agreement.[5]

---

[4]According to *Zani*, the terms of an agreement are bargained for by the State and thus, the question to be determined is whether the State, not the court, is bound by the contract. 701 S.W.2d at 254-55.

[5] This the 17th day of September, 1996, the foregoing Defendant's Amended Motion to Enforce Agreement with Prosecutor having been presented to and considered by the Court, it is the opinion of the Court that said Motion should be Denied.

It is THEREFORE ORDERED that said Motion to Enforce Agreement with Prosecutor be DENIED.

5

By his petition for discretionary review, appellant inquired (1) whether a subsequent indictment for an offense arising from the transaction that was the subject of an immunity agreement could be brought solely because the order of dismissal did not state that the dismissal was "with prejudice," and (2) whether, after appellant upheld his end of the bargain, the subsequent indictment could be brought solely because the trial court was unaware of the specific terms of the immunity agreement.[6] Before we commence our analysis of the two issues we have been directed to review, we first consider the appropriate procedure for enforcing an immunity agreement.

## Procedure for Enforcing Immunity Agreement
## Zani v. State

In *Zani*, the Court announced the level of proof required for enforcing an immunity agreement and upon whom the burden of meeting that level of proof must be placed. After discussing various policy concerns, the Court held:

> In the instant case, the trial court properly conducted a pre-trial hearing on the validity of the immunity agreement in order to determine the right of the State to prosecute. Thus, the State, in seeking to defeat the immunity agreement, is limited to this evidence presented prior to the actual trial.

> * * *

---

[6]According to the opinion of the Court of Criminal Appeals, the State neither responded to the petition nor cross-petitioned and the State's argument that appellant violated the immunity agreement would not be considered for the first time on discretionary review.

6

However, we must remember that important rights are relinquished by the informant and in many instances, as here, without the immunity agreement and subsequent testimony no evidence would exist upon which to convict the co-defendant. If we are to keep this effective, if not attractive, criminal investigatory tool viable we must make certain that its terms are *strictly enforced.*

(Emphasis added).

In sum, there will be no trial if the immunity agreement is valid. Thus, the determination of whether the agreement is valid cannot be left for the trial itself. If the agreement is to mean anything such an issue must be conclusively decided prior to trial.

*Zani*, 701 S.W.2d at 254.

Following this holding, the Court announced the procedure and allocated the burden of proof of the defendant and the State to be utilized in the pretrial determination of the existence and enforceability of an immunity agreement. At a pretrial hearing:

- the initial burden is on the defendant to show the existence of an agreement by a preponderance of the evidence;

- if the defendant meets his initial burden, then the burden shifts to the State to show beyond a reasonable doubt why the agreement is invalid or why prosecution should be allowed despite the agreement; and

- in seeking to defeat the immunity agreement, the State is limited to the evidence presented before the actual trial.

Appellant's version of the agreement set out in his motion and the State's version set out in its brief differed in minor respects as follows:

7

| Appellant's Version Per Motion | State's Version Per Page 2 of State's Brief Filed 6/11/98 |
|---|---|
| A. Sean Allen Smith agreed to provide a video-taped statement of the events surrounding the death of Mr. Merriman and answer all of the prosecutor's questions to the best of his ability. | A. Brown [defense counsel] and the Randall County Criminal District Attorney's office began negotiations which resulted in an agreement between the prosecution and appellant. |
| B. The District Attorney and his agents had to believe that the Defendant was providing truthful information to the best of his ability. | B. Appellant agreed to give the Criminal District Attorney's office a truthful and complete statement of the events surrounding the death of Merriman (including appellant's own involvement in these events) and to testify at the co-defendants' trials. |
| C. Sean Allen Smith would be available to testify at any of the trials of the other defendants and would so testify if requested to do so. | C. In return, the State agreed to dismiss the pending Capital Murder indictment under Cause No. 6988-C. |
| D. The District Attorney of Randall County, Texas, Randall Sherrod, agreed, in exchange, that the capital murder indictment pending against Sean Allen Smith would be dismissed with prejudice and that no other prosecution would be brought against Sean Allen Smith as a result of the incidents surrounding the death of Mr. Merriman. | D. This oral agreement, however, was never put in writing. |

By his amended motion, appellant alleged that he had performed the agreement. Among other things, he alleged that he gave a video-taped statement on June 28, 1992, before an assistant district attorney and two other members of the prosecutor's staff, and the indictment was dismissed on April 20, 1993. He further asserted that although a special prosecutor made plans to call him as a witness in the prosecution of a co-defendant, and he was available to provide testimony, the special prosecutor decided not to call him as a witness. Although not mentioned in appellant's motion, the State admitted that the former prosecution team required him to submit to a polygraph examination; however, the State claimed that the test results were inconclusive.

8

## Existence of Immunity Agreement[7]

We begin our review of this issue by focusing on the proceedings following completion of appellant's evidence and the State's announcement that, "We have nothing, Your Honor, other than cross-examination." The State did not move that appellant's motion be denied because he had not satisfied his burden of proof. Instead, the State argued:

> we are prepared to present, in spite of the incredible evidence heard in this hearing, that the Defendant lied with impunity throughout the video tape . . . . The physical evidence we believe *at the trial* will prove this beyond a reasonable doubt.

(Emphasis added). In summation, contrary to the procedure prescribed in *Zani*, counsel for the State requested:

> Your Honor, we would ask the State be allowed to present the evidence at trial, and once the Court has heard all of that evidence, make a determination about *whether or not* the Defendant *breached the contract* and therefore it was not blinding [sic] on it [sic] state.

(Emphasis added). By these requests, the State conceded (1) the existence of a contract, (2) acknowledged its burden of proof to show a breach of the contract beyond a reasonable doubt, but (3) contrary to *Zani*, requested that it be allowed to present its evidence at trial that appellant breached the agreement.

---

[7]In our analysis of this issue, we consider only the evidence that was presented at the pretrial hearing. *Zani*, 701 S.W.2d at 254.

9

Further, although we do not generally refer to the law of contracts in reviewing criminal appeals, because an agreement is a contract, our analysis must be based on contract law. *See* Tex. Code Crim. Proc. Ann. art. 1.27 (Vernon 1977).[8] Moreover, references to contract law are not foreign in criminal proceedings. *See generally*, Speth v. State, 6 S.W.3d 530, 533 (Tex.Cr.App. 1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1720, 146 L.Ed.2d 642 (2000) (referencing contract law where probation was granted).

Although the State disagrees with appellant's version of the terms of the agreement, it admits that the former prosecutor and appellant's former attorney entered into an agreement. Considering the law of contracts discussed below, because the testimony of former District Attorney Sherrod includes a summation of the agreement and its performance, we need not burden this opinion with a review of the evidence provided by the other defense witnesses. During his testimony on direct examination former District Attorney Sherrod testified in part:

> Q. Were you aware that part of the agreement was that Sean Smith would give a video-taped statement to your office?
>
> A. Evidently, that's what we decided to do. I don't remember whether I talked to Mike Coy or John Davis, but we felt that we needed to at least see what his testimony would be and to pin him down on what the specific facts were that he could testify to. So, evidently, did occur, yes, sir.
>
> Q. As far as you are aware, has Sean Smith also been available to testify against any of the other Co-Defendants who were indicted?

---

[8]Article 1.27 provides: "If this Code fails to provide a rule of procedure in any particular state of case which may arise, the rule of the common law shall be applied and govern."

A. Yes.

Q. Was part of the determination or part of the agreement a determination to be made by your office as to whether or not that Sean Smith was being truthful in terms of his involvement with the Merriman situation?

A. Yes, sir. The dilemma we were in–and it was the situation where Mr. Brown was not going to leave this offer open forever–we had to make a decision on whether we were going to use him or not. . . . [A]nd we stressed to Jim that we expected his client to be truthful, but the important part, regardless of whether his client said what he was telling was the truth or not was how consistent what he testified to was with the evidence that we had in the case.

Q. Did you eventually agree to the motion that was filed to dismiss the indictment? Did you eventually agree that–to the motion and the subsequent order of dismissal?

A. Yes.

Then, on cross-examination, Sherrod summed up his testimony as follows:

Q. The agreement was complete, but it wasn't complete if he didn't testify?

A. I felt like the *agreement was complete* when those three cases were disposed of. I made the decision that he would not be needed in those other cases. That was my decision. And once I signed that dismissal it was a *done deal* as far as I was concerned.

(Emphasis added).

The State does not contend that the immunity agreement had to be in writing, and indeed, no statute or case imposes such a requirement. Where the parties expressly state the terms of an agreement, they create an express contract and are bound by it to the exclusion of conflicting implied terms. Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld.

11

Co., 480 S.W.2d 607, 609 (Tex. 1972); Woodard v. Southwest States, Inc., 384 S.W.2d 674, 675 (Tex. 1964). However, a contract may also be implied. In Emmer v. Phillips Petroleum Co., 668 S.W.2d 487, 490 (Tex.App.–Amarillo 1984, no writ), we held:

> [t]he absence of an express contract does not, however, foreclose the possibility of a contractual relationship, because the parties may, by their acts and conduct, create an implied contract.

As explained in *Emmer*, the promise is implied by law to avoid injustice and the law finds a mutual intent to contract from the facts and circumstances of the case. *Id.* Considering that the State admits the existence of an immunity agreement, the testimony of former District Attorney Sherrod, and other evidence, even if insufficient to establish the existence of an express contract, is sufficient to support a contract implied in fact from the facts and circumstances of the case. *Emmer*, 668 S.W.2d at 490.

## Performance Under The Immunity Agreement

The State had the burden to show beyond a reasonable doubt at the pretrial hearing that the agreement was invalid or that prosecution should be allowed despite the agreement; however, notwithstanding its burden of proof, the State did not present any evidence during the pretrial hearing. Accordingly, the testimony offered by former District Attorney Sherrod that:

> I felt like the *agreement was complete* when those three cases were disposed of. I made the decision that he would not be needed in those other cases.

12

> That was my decision. And once I signed that dismissal it was a *done deal* as far as I was concerned

established that appellant performed pursuant to the immunity agreement. (Emphasis added). Without citing any authority applicable to the procedural situation presented herein, the State suggests that we should consider the evidence introduced at trial. Applying *Zani*, *we* disagree. *Zani* expressly holds:

> [t]hus, the determination of whether the agreement is valid cannot be left for the trial itself. If the agreement is to mean anything, such an issue *must be conclusively decided prior to trial*.

(Emphasis added). Further, because the trial court denied appellant's motion before hearing any evidence from the State, its order denying appellant's motion was not based on the State's evidence at trial.

Moreover, although appellant's counsel contended that the State had not presented any evidence, notwithstanding the court's comment that it prohibited the State from introducing evidence, the State:

- was a moving factor creating and inviting the error by requesting to introduce evidence during trial; Ex parte Guerrero, 521 S.W.2d 613, 614 (Tex.Cr.App. 1975); Capistran v. State, 759 S.W.2d 121, 124 (Tex.Cr.App. 1982); *see* State v. Manning, 833 S.W.2d 322, 323 (Tex.App.--Waco 1992, no pet.) (holding that the doctrine of invited error should apply to the State);

- did not withdraw it's request to introduce its evidence at trial or move to re-open the evidence before the trial court denied appellant's motion;

> State v. Rodriguez, 11 S.W.3d 314, 323 (Tex.App.--Eastland 1999, no pet.);

- did not object to the order of the hearing announced by the trial court[9] that it had prohibited it from presenting any evidence at the pretrial hearing and did not inform the court of the procedure announced in *Zani* that all of the evidence must be heard at a pretrial hearing; and

- did not preserve error by objecting to the trial court's prohibition on the introduction of evidence and presenting a bill of exception. Tex. R. App. P. 33.1 (a) and 33.2.

A review of the pretrial evidence demonstrates that the State did not offer any evidence to show that appellant did not perform the agreement; it does show that the former prosecutor "felt like the agreement was complete" and that it was "a done deal" when he authorized the dismissal of the case.

We have not overlooked the State's contention that we should defer to the trial court's determination of historical fact that no immunity agreement existed; however, the State does not cite any authority applying that rule to pretrial hearings to determine the existence and enforceability of immunity agreements and the *Zani* Court did not extend such deference. We are also aware that at the time the trial court ruled on appellant's motion, the Court of Criminal Appeals had not yet announced that the prosecutor "is responsible for crafting the conditions of an immunity agreement" and "is in the best position to evaluate performance before and after a dismissal." *Smith*, 70 S.W.3d at 855. Further, the State's contention is based on

---

[9]The record does not reflect what evidence the State proposed to introduce which the trial court "stopped Mr. Farren from doing."

14

materials from another proceeding which were not introduced into evidence at the trial court level and although they are contained in the clerk's record, cannot be considered on appeal. Chambers v. State, 149 Tex. Crim. 400, 194 S.W.2d 774, 775 (1946); Webber v. State, 21 S.W.2d 726, 731 (Tex.App.--Austin 2000, pet. ref'd).

In light of the following: (1) the Court's announcement in *Smith* that a prosecutor is responsible for drafting immunity agreements and evaluating performance thereunder, (2) *Zani's* requirement that immunity agreements be strictly enforced and the proper procedure for doing so, (3) the State's announcement at the pretrial hearing that,"[w]e have nothing, Your Honor, other than cross-examination," and (4) the evidence presented by appellant at the pretrial hearing, we hold that no rational trier of fact could have found that an immunity agreement did not exist and that appellant did not perform pursuant to that agreement. Thus, we conclude the agreement was enforceable. Accordingly, appellant's first and third issues are sustained and our consideration of issue two is pretermitted.

Accordingly, based upon our analysis of the two issues we were directed to consider upon remand by the Court of Criminal Appeals, the judgment of the trial court is reversed and a judgment of acquittal is hereby rendered.

Don H. Reavis
Justice

15

Publish.