**Affirmed and Majority and Dissenting Opinions filed September 30, 2021.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-20-00496-CR

### THE STATE OF TEXAS, Appellant

### V.

### SANITHA LASHAY HATTER, Appellee

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1667833**

## NO. 14-20-00539-CR

### IN RE THE STATE OF TEXAS EX REL. KIM OGG

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
230th District Court
Harris County, Texas
Trial Court Cause No. 1667833**

## DISSENTING OPINION

The State appeals an order effectively dismissing a felony charge against appellee. The State contends the trial court lacked authority to order the case dismissed because the State did not consent. According to appellee, however, the trial court's order merely enforces by specific performance the prosecutor's earlier promise to dismiss the case and not re-file it. After the prosecutor made that promise, he dismissed the case. Later, his supervisors instructed him to re-file it, and he did. Appellee asserts that re-filing the case despite the prosecutor's promise not to do so violated her due process rights, and the trial court's order compelling the State to perform the promise should be affirmed.

Our court affirms the judgment. I dissent because the majority's disposition has no basis in law and mischaracterizes the facts.

### Background

Appellee was arrested for felony assault of a public servant and misdemeanor driving while intoxicated ("DWI") arising from a single incident. While these charges were pending, appellee was charged with a second misdemeanor DWI. Natalie Schultz represented appellee in the felony case; another attorney represented appellee in the misdemeanor cases.

The State offered to dismiss the felony assault charge if appellee pleaded guilty to the DWI charges. Schultz wanted to accept the State's plea offer, but appellee's misdemeanor defense counsel did not. Schultz believed appellee was being treated unfairly because the proposed felony disposition was contingent on the misdemeanor dispositions, and appellee's misdemeanor defense counsel did not want to accept the State's plea offer. Schultz discussed her concerns with the felony prosecutor several times.

2

When the felony case trial date arrived, the misdemeanor cases were still unresolved. The felony prosecutor believed it inappropriate to proceed to trial on the felony assault case when the State had offered to dismiss that charge if appellee pleaded guilty to the misdemeanor charges. The prosecutor and Schultz discussed that the State would file a motion to dismiss the felony case, which would contain a statement reserving the State's right to re-file. The prosecutor told Schultz, however, that he would not re-file the felony case and that he would not instruct any other prosecutors to re-file the felony case. The prosecutor then filed a motion to dismiss, which stated expressly that the State reserved the right to re-file. The trial court signed an order dismissing the felony case on January 22, 2020 (the "January Dismissal Order").

At the time the prosecutor filed the motion to dismiss, he was under the impression that appellee would plead guilty in the misdemeanor cases. Appellee acknowledges, however, that no plea bargain agreement was consummated; her misdemeanor counsel was unwilling to agree to a plea bargain. The prosecutor later learned that the misdemeanor DWI charges were dismissed, and no plea had been made in those cases.[1]

According to Schultz, the arresting officer connected to the assault charge learned that the DWI cases had been dismissed, and the officer complained to the district attorney's office. Later, the felony prosecutor's supervisor instructed him to re-file the felony case. The prosecutor called Schultz to inform her of these events. The prosecutor apologized but said he was under instructions to re-file the felony case, which he did.

---

[1] According to appellee, the DWI charges were dismissed because the blood test results were unreliable.

In the re-filed felony proceeding, appellee promptly filed a "Motion for Specific Performance," accompanied by a brief and an unsworn declaration signed by defense counsel.[2]  In her declaration, Schultz stated that the felony prosecutor had promised to dismiss and not re-file the felony assault case against appellee "no matter what" happened with the misdemeanor DWI charges.  Schultz also averred that she and the prosecutor had a "gentleman's agreement" to dismiss the felony charge.  In the motion, appellee asserted that re-filing the felony case violated her due process rights because the Fourteenth Amendment's due process clause "requires that a promise made by the prosecutor be fulfilled."  She argued that when a prosecutor does not carry out his side of a plea bargain, a defendant is entitled to have the agreement specifically performed or the plea withdrawn.  Acknowledging that the present case involved not a plea bargain agreement but a "broken promise to dismiss," appellee urged nonetheless that specifically enforcing the prosecutor's unilateral promise was the only appropriate remedy.

At the hearing on the motion, the felony prosecutor testified as described above.  He acknowledged that he told Schultz that he had no intention of re-filing the felony case.  But he could not recall using the terms "promise" or "gentleman's agreement" in his discussions with appellee's counsel.  The trial court asked the prosecutor if the disposition of the felony case would have changed if the DWI cases been dismissed prior to the felony trial date.  Acknowledging that was possible, the prosecutor explained further,

> I believed there was probable cause for the case.  That there was a – it was a righteous charge that [appellee] faced.
>
> But given the fact that there were two DWI charges and that there were – the assault of the peace officer stemmed from one of the driving while intoxicated charges, I felt that it would be better served for

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 132.001(a), (c), (d).

[appellee] to get help for any alcohol or substance abuse issues that she may have rather than being saddled with a felony conviction. That was my preference in the case.

The trial court found the felony prosecutor to be "an honorable, forthright, and honest prosecutor"; it found Schultz's declaration to be true and correct; and it found that the prosecutor promised to dismiss the case "no matter what", but that the prosecutor simply did not remember making that promise. The court did not find that a contract existed. The trial court granted the motion for specific performance and declared on the record that the case "is dismissed." On the June 16, 2020 signed order granting the motion, the trial court wrote, "State is ordered to dismiss" (the "June Dismissal Order").

The State filed this appeal together with an alternative petition for writ of mandamus. I agree with the majority that we have appellate jurisdiction and that the mandamus proceeding is appropriately dismissed as moot. *See* Tex. Code Crim. Proc. art. 44.01(a)(1); *State v. Moreno*, 807 S.W.2d 327, 332, 334 (Tex. Crim. App. 1991).

## Analysis

### A.    Standard of review and governing law

We apply a bifurcated standard of review when considering a trial court's decision to dismiss a case. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We afford almost total deference to a trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses. *Id.* But when resolution of the case turns solely

5

on questions of law or mixed questions that do not depend on credibility determinations, our review is de novo. *Id.*

A trial court has no general authority, inherent or implied, to dismiss a case without the prosecutor's consent. *See State v. Plambeck*, 182 SW.3d 365, 368 (Tex. Crim. App. 2005) (discussing *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991)); *State v. Dinur*, 383 S.W.3d 695, 699 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This rule applies except in limited circumstances when a dismissal is authorized by statute, common law, or the constitution. *See State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). Thus, for example, a trial court may dismiss a case without the State's consent when a defendant's constitutional right to a speedy trial or right to counsel has been violated, or if there is a defect in the charging instrument, or when a defendant has been detained and no charging instrument is properly presented. *See id.* These are not the only circumstances in which a trial court may dismiss charges without the State's consent, but such a dismissal is "a drastic measure only to be used in the most extraordinary circumstances." *Id.* at 817.

**B.** **The trial court erred in signing the June Dismissal Order over the State's objection, and the majority errs in affirming that order.**

In its sole issue, the State contends that the trial court was without authority to dismiss the charging instrument or order the State to dismiss the re-filed case when the State did not consent. Further, assuming the prosecutor promised to dismiss the felony charge in January and not re-file it, as the trial court found, the State argues such a promise is unenforceable because it is not supported by consideration or a court-approved immunity agreement. I would sustain the State's issue.

The majority's contrary disposition is based on a misconception that the prosecutor's January promise constituted an "immunity agreement," which is itself

6

based in part on a misstatement of the trial court's findings. The majority reasons that the January Dismissal Order was in essence a dismissal with prejudice based on what the court characterizes as an "immunity agreement." Citing Code of Criminal Procedure article 32.02, the majority says that appellee had an immunity agreement with the State in January, which the trial court "approved" six months later in June when the court granted appellee's motion for specific performance. The majority also cites *Smith*[3] and *Graham*.[4] But these authorities do not support the majority's holding.

For the several reasons that follow, I would hold that the January Dismissal Order was not a dismissal with prejudice based on an approved immunity agreement and that the trial court's June Dismissal Order granting appellee's motion for specific performance was error. In sum, there is neither evidence of an "immunity agreement" nor evidence of court consent to any agreement.

1.    *There exists no immunity "agreement."*

It is undisputed that the State did not consent to dismissal of the re-filed felony case. Therefore, the trial court could not order the case dismissed unless a statutory, common law, or constitutional basis existed to support dismissal over the State's objection. *See Plambeck*, 182 S.W.3d at 368; *Mungia*, 119 S.W.3d at 816.

I begin with appellee's arguments. Appellee contends an exception exists because the State's decision to re-file the felony case violated her due process right under the Fourteenth Amendment to the federal Constitution. Appellee maintains that a prosecutor's promise to dismiss and not re-file a case must be fulfilled and is enforceable by specific performance. She directs us to cases recognizing the

---

[3] *Smith v. State*, 70 S.W.3d 848, 851 (Tex. Crim. App. 2002).

[4] *Graham v. State*, 994 S.W.2d 651, 654 (Tex. Crim. App. 1999).

availability of specific performance in the criminal context, namely *Gibson v. State*, 803 S.W.2d 316, 318 (Tex. Crim. App. 1991), and *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Appellee's authority, however, does not support the contention that her due process rights were violated. Those cases are inapplicable because they involved plea agreements, and the present case does not. In *Gibson*, for instance, a grand jury indicted Gibson for possession of amphetamine and retaliation. *Gibson*, 803 S.W.2d at 317. Gibson entered into a written plea agreement with the prosecutor in which he agreed to plead guilty to the retaliation charge in exchange for a forty-year sentence, no deadly weapon finding, and dismissal of the possession charge. *Id.* The parties submitted the agreement to the trial court, and the trial court announced that it would follow the plea bargain and assessed Gibson's punishment for the retaliation case as recommended by the prosecutor. *Id.* However, for a reason not reflected in the record, the possession charge was not dismissed. *Id.* Thereafter, Gibson filed a motion for enforcement of the plea agreement in the possession case and sought dismissal of that charge pursuant to the plea agreement. *Id.* The trial court denied the motion, and Gibson was subsequently tried and found guilty of possession. *Id.* On appeal from his possession conviction, Gibson asserted that he had a federal constitutional right to have the plea agreement enforced. *Id.* The Court of Criminal Appeals agreed:

> When, as in this cause, a guilty plea rests to any significant degree on a promise of the prosecutor, so that it can be said that the promise is part of the inducement or consideration for the plea, the due process clause of the Fourteenth Amendment requires that such promise be fulfilled. If for some reason the prosecutor does not carry out his side of the agreement, the defendant is entitled to have the agreement specifically performed or the plea withdrawn, whichever is more appropriate under the circumstances.

8

*Id.* at 318.

Here, there was no plea agreement. The record does not indicate that appellee accepted the State's plea offer, and appellee did not perform any part of an exchange by pleading guilty to the misdemeanor DWI charges or by relying on the State's plea offer in any way. Instead, it is undisputed that her misdemeanor defense counsel refused to agree to the plea offer and that the misdemeanor DWI charges against her were dismissed.

Moreover, in response to the majority's position, I conclude there is no evidence of an agreement of any kind, including one granting immunity in exchange for anything from appellee. What the majority characterizes as an "agreement" is at most a unilateral promise by the prosecutor. Although the trial court found the prosecutor in fact made a promise to "dismiss this case no matter what," the court did *not* find an agreement existed. The majority quotes the court's ruling from the record but notably omits the part where the trial judge said he was "not sure" that the promise "is a contract." He continued, "I'm not sure that contract law is something that we hear in here."

An immunity "agreement" requires an exchange of consideration. *Accord Smith v. State*, 96 S.W.3d 377, 383 (Tex. App.—Amarillo 2002, pet. ref'd) (explaining that, because an immunity agreement is a contract, analysis "must be based on contract law"). There was no exchange here, nor any bargained-for promise, nor any reliance on a promise to appellee's detriment. Thus, there existed no immunity "agreement" for the court to approve. The prosecutor's statement that he had no intention to re-file the felony case is not an assurance on which appellee could rely for purposes of enforcing the statement, absent the existence of an approved immunity agreement or a plea agreement, neither of which exist here. *See Graham*, 994 S.W.2d at 654. Perhaps some action by appellee in reliance on the

9

prosecutor's statement could result in a binding commitment, *see State v. Bragg*, 920 S.W.2d 407, 409 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd), but there exists no evidence of reliance either.

My conclusion is consistent with general contract law, which I believe applies.[5] *See Smith*, 96 S.W.3d at 383. The prosecutor's statement to appellee's counsel was at most a unilateral promise, which generally is not enforceable absent consideration. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997) (consideration is an essential element for a valid, enforceable contract); Restatement (Second) of Contracts § 75 cmt. a (no duty is generally imposed on one who makes an informal promise unless the promise is supported by sufficient consideration). When a promisor's performance is optional, the promise is illusory and cannot constitute valid consideration. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301 (Tex. 2009); *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994) ("When illusory promises are all that support a purported bilateral contract, there is no contract."); Restatement (Second) of Contracts §§ 2 cmt. e; 77 cmt. a. An illusory promise is one that fails to bind the promisor, who retains the option of discontinuing performance. *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex. App.—Houston [1st Dist.] 1996, no writ). Here, the prosecutor's promise to dismiss the felony case and not re-file charges was illusory because the State retained the right to re-file charges in the written motion to dismiss. The promise was gratuitous, and Texas courts do not enforce gratuitous promises. *See Fleck v. Baldwin*, 172 S.W.2d 975, 978 (Tex. 1943).

---

[5] Presumably, appellee and my colleagues in the majority are of a similar view that contract principles apply, as appellee sought to enforce the prosecutor's promise by seeking specific performance, a contract remedy, and the majority agrees she is entitled to that relief.

I say that the prosecutor's statement was "at most" a unilateral promise because, according to the Restatement, his assurance to appellee's counsel not to re-file the felony case likely did not qualify as a "promise." Restatement section 2 defines "promise" as a "manifestation of intention to act or refrain from acting in a specified way, *so made as to justify a promisee in understanding that a commitment has been made*." Restatement (Second) of Contracts, § 2 (emphasis added). The prosecutor's statement that he would not re-file the felony case could not have justified appellee in understanding that the State was bound to a commitment because the motion to dismiss reserved the State's right to re-file and appellee was aware of the prosecutor's intention to include such a reservation in the motion to dismiss. "Even if a present intention is manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in an expectation of performance." *Id*. cmt. e.

Accordingly, I would hold that the January Dismissal Order was without prejudice to the State's right to re-file charges. Further, I conclude that, absent the accused giving something in exchange for the prosecutor's promise to dismiss and not re-file, that promise was not, in this circumstance, binding on the State. *See Zani v. State*, 701 S.W.2d 249, 253 (Tex. Crim. App. 1985) ("[T]hese [immunity] grants are nothing more than *contracts* in which *each party gains a benefit and suffers a burden*, we must determine those relative benefits and burdens to ensure that each has adequately performed." (emphasis added)); *Bragg*, 920 S.W.2d at 409 (rejecting appellee's argument that State agreed not to re-prosecute when appellee did not detrimentally rely on the State's assertions). There exists neither an immunity agreement nor a guilty plea induced by the dismissal of the felony assault charges, as there was in *Gibson*, and appellee's due process rights are not implicated by the

11

re-filing of the indictment in this case. As the majority's holding is grounded on the existence of an "immunity agreement," it is error.

I express no opinion on whether the prosecutor's statement would bind the State if the motion to dismiss had not reserved the right to re-file and if the prosecutor had not told appellee's counsel that the motion would reserve the State's right to re-file.

2. *The prosecutor's promise not to re-file the felony charge is not an enforceable grant of immunity because the court never approved it.*

Assuming for argument's sake that the prosecutor's promise could be construed as an "immunity agreement," there is no evidence the trial court approved any agreement in January, and it could not have approved one in June.

Article 32.02 governs a prosecutor's authority to dismiss a case. Tex. Code Crim. Proc. art. 32.02.[6] It directs that a dismissal sought by the prosecutor must be approved by the trial court. *Id.*; *Smith*, 70 S.W.3d at 851. Therefore, "a District Attorney has no authority to grant immunity without court approval, for the approval of the court is 'essential' to establish immunity." *Smith*, 70 S.W.3d at 851 (footnotes omitted). A prosecutor's grant of immunity from future prosecution is binding only with the trial court's consent. *See Graham*, 994 S.W.2d at 654 ("When a court has not approved a prosecutor's agreement to grant immunity from prosecution, there is no grant of immunity on which a defendant can rely."); *see also Smith*, 70 S.W.3d

---

[6] This article provides:

**Dismissal by state's attorney**

The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge.

Tex. Code Crim. Proc. art. 32.02.

12

at 851. Importantly, if a prosecutor's decision to dismiss "results from an immunity agreement," the court must at least "be aware that the dismissal is pursuant to an immunity agreement," even though the court need not know the terms. *Smith*, 70 S.W.3d at 855.

### a. No court approval in January

The State's January 22, 2020 motion to dismiss, and the court's order of the same date, do not indicate any awareness by the court that the State's dismissal was based on or resulted from an immunity agreement not to re-file the felony charge. The record facially refutes any contrary suggestion. The State's motion clearly states, "State reserves right to refile." The prosecutor informed appellee's counsel that the motion to dismiss would include a statement reserving the State's right to re-file the felony charge. Additionally, I see no evidence elsewhere establishing that the trial court was aware on January 22 that the dismissal was "pursuant to an immunity agreement." *Id.* The order does not state, for example, that the dismissal is "with prejudice," which might indicate court awareness of an immunity agreement.[7] In January, the trial court consented to dismissal, but it could not have consented to any immunity agreement because there is no evidence that the motion to dismiss "resulted from an immunity agreement," or that the court was "aware" of any immunity agreement. *Id.*

By not concluding that the trial court approved an immunity agreement in January, I presume my colleagues in the majority agree that the court was not aware of, and thus did not consent to, a dismissal based on an immunity agreement in January.

---

[7] A motion to dismiss that reserves a right to re-file is not consistent with a motion to dismiss with prejudice. *See State v. Atkinson*, 541 S.W.3d 876, 879 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

### 2. No court approval in June

According to the majority, "[b]y granting Appellee's motion for specific performance, the trial court provided the approval necessary to render the grant of immunity enforceable." Maj. Op. at 8. The court says the June Dismissal Order, coupled with the January Dismissal Order, "suppl[y] the necessary approval" for article 32.02 purposes.

The majority's theory has several fatal problems.

First, article 32.02 has no applicability to appellee's motion for specific performance in the re-filed action,[8] and appellee has not contended otherwise. Article 32.02 is entitled, "Dismissal by state's attorney." By its terms, it governs when the *State* seeks dismissal. The State was not seeking to dismiss the new cause number; appellee was. Moreover, article 32.02 does not purport to deal with a case already reduced to final judgment. *See Satterwhite v. State*, 36 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).[9] When the prosecutor is not requesting dismissal, generally the court lacks authority to dismiss, subject to exceptions not applicable here.[10]

Additionally, any court approval of the purported immunity agreement necessarily would have to pre-date appellee's request to enforce the agreement,

---

[8] The original case was filed under cause number 1622433. The re-filed case was assigned a new cause number, 1667833.

[9] The court dismissed the original case—the January Dismissal Order—on January 22, 2020. No party filed a motion for new trial or appeal from that order. It became final February 21, 2020, and the trial court lost plenary jurisdiction over that cause. In a criminal case, if no party timely files a motion for new trial, a motion in arrest of judgment, or other similar motion, the trial court's plenary power expires thirty days after sentence is imposed or an appealable order issues. Tex. R. App. P. 21.4, 22.3; *Collins v. State*, 240 S.W.3d 925, 927 n.2 (Tex. Crim. App. 2005); *In re Gibson*, Nos. 12-16-00271-CR, 12-16-00272-CR, 12-16-00273-CR, 2016 WL 5845831, at *1 (Tex. App.—Tyler Sept. 30, 2016, no pet.) (mem. op., not designated for publication).

[10] *Johnson*, 821 S.W.2d at 612 n.2, 613.

14

because, absent prior court approval, there is no binding agreement to enforce. Appellee's motion for specific performance sought to enforce a promise allegedly binding since January. But the majority is saying that court approval did not occur until June. If the prosecutor's promise was not binding on the State in January—it was not—then appellee's motion for specific performance was not based on a binding agreement and could only be denied.

For these reasons, I conclude there is no constitutional violation authorizing the "drastic remedy" of dismissing an indictment without the State's consent. *See Mungia*, 119 S.W.3d at 817. Appellee has not presented any statutory or common law basis supporting dismissal of the felony charge absent the State's consent. *See, e.g.*, *id.* at 816 (explaining that, with no inherent authority to dismiss charges without the State's consent, a court must gain its authority to do so from constitution, statute, or common law). The majority's reasoning suffers from at least the critical errors I have mentioned and cannot rest on article 32.02, *Smith*, or *Graham*. Under these circumstances, I would hold that the trial court lacked authority to order the State to dismiss the felony assault charge against appellee. I would also hold that a prosecutor's unilateral assurance to dismiss a case and not re-file it is not enforceable when that assurance was not part of a plea agreement or a court-approved immunity agreement. The majority's result is simply an attempt to conjure a rule that a prosecutor's unilateral promise to dismiss is enforceable, akin to equitable estoppel, which clearly does not exist in Texas. *Graham*, 994 S.W.2d at 656.

In closing, I note my agreement with Judge Cochran, who observed the wisdom of a rule requiring immunity agreements be documented, signed by the defendant, his counsel, the prosecutor, and the trial judge. *Smith*, 70 S.W.3d at 856 (Cochran, J., concurring). I echo that sentiment. Once the prosecutor assured appellee that the case would be dismissed and not re-filed, appellee could have

15

requested that assurance in writing. Appellee also could have alerted the court in January that the State's motion to dismiss included a reservation of the State's right to re-file that was inconsistent with the prosecutor's verbal assurances, thus bringing the issue to the court's attention at that time. Documenting or stating for the record any immunity understanding is the best way to ensure that the parties get what they bargain for, assuming a bargain is reached.

/s/    Kevin Jewell
       Justice

Panel consists of Justices Jewell, Bourliot, and Hassan. (Hassan, J., majority).

Publish — Tex. R. App. P. 47.2(b).

16